# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7770 | **DATE** | 5/23/2001 |
| **CASE TITLE** | Georjean Sweis vs. Hyatt Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Defendant's Motions for Summary Judgment (doc. #48), to Strike and Deem Admitted (doc. #68-1 & 68-2), and Plaintiff's Motion to Strike (doc. #69)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Defendant's Motion for Summary Judgment (doc. #48) is **GRANTED**. Defendant's Motion to Strike certain responses in Plaintiff's Rule 56.1 Statement of Facts (doc. #68-1) is **DENIED**. Defendant's Motion to Deem Admitted portions of its Rule 56.1 Statement of Facts (doc. #68-2) is also **DENIED**. Plaintiff's Motion to Strike Defendant's Rule 56.1 Motion (doc. #69) is **DENIED**.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

**MAY 2 5 2001**
date docketed

docketing deputy initials

date mailed notice

JHC  courtroom deputy's initials

CB-T
FILED FOR DOCKETING
01 MAY 24  PM 4: 42

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

82

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORJEAN SWEIS,          )
    Plaintiff,          )
               )          No. 98 C 7770
    v.          )
               )          **JUDGE WILLIAM J. HIBBLER**
HYATT CORPORATION,          )
    Defendant.          )

**DOCKETED**

**MAY 2 5 2001**

## MEMORANDUM AND OPINION

Former employee brought action against former employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., alleging that she was subjected to unequal terms of employment and was thus terminated on the basis of her gender and in retaliation for her complaint about past discriminatory practices. Defendant has denied all claims and moves for summary judgment. This Court finds that Plaintiff has failed to provide adequate evidence that there is a genuine question of material fact with respect to her claim of termination due to gender discrimination. Additionally, Plaintiff has failed to establish a *prima facie* case of retaliation and has failed to prove that Defendant's proffered explanation for termination was pretextual. Therefore, Defendant's motion for summary judgment (doc. #48) is **GRANTED**.

## BACKGROUND

Plaintiff Georjean Sweis ("Sweis") began her employment with Defendant Hyatt Corporation ("Hyatt") in 1981. In 1989, she was promoted to Hyatt's Corporate Office in the Technical Services and Engineering department. In June 1994, Sweis transferred into the Hotel Accounting department. She remained in that department until her termination in July 1995.

1



Sweis maintains that from 1990 until her termination she was discriminated against because of her gender and subject to abusive gender-based mistreatment. Sweis repeatedly complained to Hyatt's Human Resources department during this time period, but did not file a formal complaint with the EEOC until October 11, 1995. In an Order filed on December 3, 1999, this Court held that only those events that occurred on or after January 4, 1995 are timely.[1] Therefore, for the purposes of this motion, events prior to January 4, 1995 are time-barred and relevant only for the purpose of establishing the fact that the plaintiff previously complained about her past supervisor's allegedly discriminatory behavior.

On April 19, 1995, Sweis requested and was given a medical leave of absence from Wendy Parker, Director of Human Resources at Hyatt. There are two forms of medical leave available to employees at Hyatt. The first is the twelve-week period available under the federal Family Medical Leave Act ("FMLA"). Once the twelve-week period under FMLA has been exhausted, the employee may apply for an additional twelve-week leave under Hyatt's Extended Medical Leave Policy. Both medical leave policies require the employee and the employee's physician to complete documentation forms. Under the policies in place at Hyatt, any employee who does not return to work or request and receive an extension of leave by the expiration of an approved leave period will be considered by Hyatt to have voluntarily quit.

Sweis took leave of her position through FMLA on April 20, 1995. On that date, Parker sent Sweis, by overnight delivery, a completed Employer Response form to initiate the leave, a Health Care Provider Certification form and a Family and Medical Care Leave handout. Sweis admits to having read the Employer Response form that contains language that specifically limits FMLA leave to twelve weeks within a twelve-month period.

---

[1] Title VII requires plaintiffs to file a charge of discrimination with the EEOC no later than 300 days after the alleged violation. 42 U.S.C. § 2000e-5(e).

Sweis' physician returned the Health Care Provider certification to Hyatt and indicated a return to work date of June 4, 1995 for Sweis. After a subsequent visit to her doctor, Sweis requested an extension of her FMLA leave to July 5, 1995. Sweis understood that she had to provide Hyatt with a doctor's extension request prior to the expiration of her original leave on June 4, 1995. On June 2, 1995, Hyatt received the doctor's request by fax and the extension was approved. At the end of May 1995, Sweis also received an additional copy of the Family and Medical Care Leave handout that states that the maximum allowable leave under FMLA is twelve weeks.

On June 20, 1995, Sweis' attorney, Paul Schofield, sent to Mary Catherine Sexton, Associate General Counsel to Hyatt, a letter charging Hyatt with harassment and gender discrimination and seeking an unspecified amount of compensation. Sexton gave the letter to Parker, and Parker initiated an internal investigation of the complaint.

Sweis did not return to work on July 6, 1995. Sweis claims that her husband sent a fax of a note from her physician extending her leave to August 5, 1995. Plaintiff could not provide a transmittal slip or facsimile conformation slip for this fax. On July 10, 1995 Parker sent Sweis a letter after discussing the issue with Sexton and Sweis' department head, Frank Borg. The letter noted the failure to return to work, outlined the process through which an extension could be requested, and referred Sweis to the Employee Handout on FMLA for further details regarding the terms of the leave.

On July 12, 1995, Schofield sent Sexton a letter enclosing a copy of the June 20 doctor's note requesting and extension of leave from July 5th to August 5th; the letter also requested that Sweis be given fully paid disability leave to November 1, 1995. In a telephone conversation

with Schofield, Sexton noted that Sweis would have to apply for long-term disability leave through UNUM, Hyatt's long-term disability leave administrator.

On July 20, 1995, Parker, after consulting with Sexton, sent Sweis a letter stating that the twelve-week maximum leave available under FMLA would expire on July 24, 1995. Parker would later admit that she miscalculated the twelve-week period, and the leave should have ended on July 13, 1995. Hyatt honored the July 24th date stated in the letter as the termination date of the FMLA leave. The July 20th letter to Sweis also stated that in order to extend her leave through the August 5th date indicated by her physician, Sweis would have to be covered by Hyatt's Extended Medical Leave Policy, which required the submission of forms by Sweis and her physician that would establish the medical necessity for the leave. Those forms were enclosed in the letter to Sweis. Hyatt extended the deadline for the submission of the Extended Medical Leave forms from July 24 to July 27, 1995, three days after the expiration of the FMLA leave.

Sweis attempted to schedule an appointment with her physician, but learned that the doctor was on vacation. On July 26, Schofield left a voicemail message for Parker requesting an additional one-week extension of the July 27th deadline for the submission of the Extended Medical Leave documentation, explaining that Sweis' doctor was on vacation.

On July 27, 1995, Parker, Sexton, and Borg met to discuss Schofield's request. After the meeting Sexton sent to Schofield via facsimile a letter informing him that Sweis' employment was being voluntarily terminated as of 5:00p.m., July 27, 1995.

On August 3, 1995, Schofield sent the completed Extended Medical Leave documentation to Sexton by messenger. By letter dated August 4, 1995, Sexton informed Schofield that Hyatt

would not reconsider its decision to terminate Sweis' employment. Subsequently, Plaintiff filed a Complaint for adjudication on December 4, 1998.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." Id. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996). Applying the above standard, this Court addresses the plaintiff's motion.

## ANALYSIS

### A. Retaliatory Discharge

#### 1. Prima Facie Case

When there is a claim of retaliatory discharge under Title VII, with no direct evidence of retaliation, the courts employ a variant of the *McDonnell Douglas* burden shifting method of

evaluation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, to establish a *prima facie* case of retaliation, plaintiff must establish that she engaged in statutorily protected expression, she suffered an adverse action by the employer, and that there was a causal link between the expression and the adverse action. *Sauzek v. Exxon Coal USA*, 202 F.3d 913, 918 (7th Cir. 2000). The burden then shifts to the employer to present a legitimate, non-discriminatory reason for the adverse action. *Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir. 1999). If the employer meets its burden of production, there is a shift back to the plaintiff to rebut the employer's proffered reason by proving that it is mere pretext for discrimination. *Id.*

Sweis engaged in statutorily protected action on June 20, 1995, when she filed a complaint with the Hyatt Corporation through a letter from her attorney that alleged gender-based discrimination. (Complaint ¶ 15.) Sweis suffered an adverse action by the employer when she was terminated from her position with the Hyatt Corporation on July 27, 1995. (Complaint ¶ 19.) However, the Court has determined that Plaintiff did not provide factual evidence sufficient to establish the requisite causal link between the protected activity and the adverse action.

To demonstrate the requisite causal connection in a retaliation claim, plaintiff must show "that the protected activity and the adverse action were not wholly unrelated." *Sauzek*, 202 F.3d at 918 (citations omitted). Plaintiff asserts that "[t]he close proximity of Sweis' complaints to her termination considered together with various other circumstances establish the required nexus" between the protected activity and the adverse action. (Pl.'s Mem. Opp. Def.'s Mot. for Summ. J. at 6). However, speculation based on suspicious timing alone does not support a reasonable inference of retaliation. *Sauzek*, 202 F.3d at 918. The fact that one event preceded another does not prove that the first event caused the result. *Id.* Instead, plaintiff must produce facts that somehow tie the adverse decision to the plaintiff's protected expressions. *Id.*

Although the time frame between the original letter from Sweis' attorney and the termination was only a matter of weeks, the termination date was not arbitrary or suspicious. The FMLA leave granted to Sweis expired twelve weeks from April 20, 1995. Plaintiff received numerous handouts explaining the FMLA leave and its parameters, she had been instructed to read these materials, she was asked if she understood them, and she received additional correspondence from Hyatt notifying her of the expiration of the FMLA leave. Barring an extension within the original FMLA leave or approval for a Hyatt-sponsored Extended Medical Leave once the twelve-week FMLA leave had expired, any employee who did not return to work following a leave would be presumed to have quit the position. As a Director-level employee in the Corporate Office who admitted to having received the written information regarding her FMLA leave, Plaintiff knew or should have known of the impending deadline. The timing of the events does not establish a causal link.

In conjunction with the timing, Sweis asserts that the causal link was established by the fact that the people to whom she complained about the discrimination were the same people who made the decision to terminate her. Knowledge of the protected activity is insufficient to establish a causal link. *Sanchez*, 188 F.3d at 747; *Tutman v. WBBM-TV/CBS Inc.*, 54 F. Supp.2d 817, 823 (N.D. Ill. 1999), *aff'd on other grounds*, 209 F.3d 1044 (7th Cir. 2000). In making this argument, Plaintiff ignores the realities of corporate structure and business decisions. A court must observe its limitations and "not sit as a super-personnel department that reexamines an entity's business decisions. No matter...how high-handed its decisional process..." the laws barring discrimination do not interfere. *Kariotis v. Navistar International Transportation Corp.*, 131 F.3d 672, 678 (7th Cir. 1997). Plaintiff rightly complained of discrimination to the Human Resources Director, Parker, and to her immediate supervisor, Borg. Because of Sweis'

complaints, Parker initiated an investigation into the allegations. Parker arranged for Sweis to go on leave due to her emotional distress, and Parker arranged for extensions within the twelve week period of that original leave when Sweis' physician indicated that the Plaintiff could not yet return to work. However, Human Resources personnel and supervisors also bear the responsibility of terminating employees if they violate company policy or regulations. In violation of Hyatt policy, Plaintiff did not return to work following the ultimate expiration of the twelve-week FMLA leave. The fact that Parker and Borg fulfilled an obligation of their employment, without any evidence discriminatory motive, does not create a causal link between the complaint and the termination.

## 2. Pretext

In its filings, Hyatt put forth a legitimate, non-discriminatory reason for terminating Sweis: she failed to return to work after the expiration of her approved FMLA leave and she did not submit the required forms within the timeframe given to extend her leave under Hyatt's private Extended Medical Leave program. Sweis' failure to return to work was viewed by Hyatt as her voluntary abandonment of the position.

Plaintiff, under the *McDonnell Douglas* method, reassumes the burden of production and must demonstrate that the proffered explanation was pretextual. Plaintiff can establish pretext either directly, with evidence suggesting that retaliation or discrimination was the "most likely" motive for the termination, or indirectly, by showing that the employer's proffered reason was not worthy of belief. *Sanchez*, 188 F.3d at 746. The indirect method requires some showing that "(1) the defendant's explanation has no basis in fact, or (2) the explanation was not the 'real reason', or (3) ...the reason stated was insufficient to warrant the [termination]." *Id.* (quoting *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).

Sweis attempts to show pretext indirectly, arguing under the second possibility announced by *Johnson*, that the explanation for termination was not the "real reason." Her arguments, however, even in light most favorable to the plaintiff, do not establish that Hyatt did not honestly believe in those reasons. If an employer honestly believed in the reasons given for termination, the plaintiff loses even if the reasons are foolish or trivial or baseless. *Kariotis*, 131 F.3d at 676.

First, Sweis contends that an alleged contradiction between deposition testimony and an affidavit both given by her supervisor, Borg, regarding previous knowledge of the protected activity provides sufficient evidence that the violation of Hyatt's policy was not the real reason for Sweis' termination. Discredited deposition testimony will not stand as affirmative evidence in response to a motion for summary judgment. *Royal Zenith Corp. v. Southwest Equipment Rental, Inc.*, No. 87 C 1911, 1989 WL 84444, at *4 (N.D. Ill. July 19,1989). Plaintiff admits that Borg's stated reason for her termination was her failure to either report to work upon the termination of her approved medical leave or request and receive an extension of leave prior to the expiration of the approved leave period. The alleged contradictions concern: knowledge of the protected activity, which cannot establish a causal link to the termination; dispute over whether Borg considered a possible November 1, 1995 return date; and dispute over whether Borg considered the implementation of Hyatt's Extended Medical Leave policy when making the decision to terminate Sweis. The contradictions in testimony, even if they were admissible as affirmative evidence of pretext, are all connected to the possible return or failure to return of Sweis after the expiration of her FMLA leave. The testimony all relates to Hyatt's policies regarding employee leave. Plaintiff has not proved that the reason proffered for her termination was not the true reason for that termination.

Second, Sweis contends that the next evidence of pretext is shown by the fact that Hyatt never specified an exact return to work date until after Sweis engaged in the protected activity. This argument also fails. All the information provided to Plaintiff regarding the federal FMLA leave indicates that the leave is available for a maximum of twelve weeks. An employee who is approved for the FMLA leave is not necessarily approved for the entire twelve weeks; the length of the leave within the FMLA leave period is determined by the employee's physician. The only date that is fixed under the FMLA leave is the ultimate expiration date of the leave, occurring twelve weeks from the start of the leave. Plaintiff's physician did not request all twelve weeks for Sweis in his original documentation. The first leave was to end on June 4, 1995; that leave was extended and approved until July 5, 1995. Both dates are within the twelve-week FMLA approved period. However, the fact that Plaintiff's physician determines the return to work date within the twelve weeks of leave available does not invalidate the fact that the ultimate termination of the leave still exists and is still applicable to Plaintiff. The fact that Hyatt offers its own Extended Medical Leave to supplement the twelve-week FMLA leave is an indication in itself that the FMLA leave is finite. Sweis did not claim that she was unable to calculate the expiration date of the FMLA leave. Her argument was that the expiration date did not apply to her because her return date was to be specified by her physician and the Director of Human Resources, Parker, commented that she "should take as long as she needed to get better." No reasonable jury could find that the overarching, federally mandated, twelve-week period of the FMLA leave would have been rescinded for just for the Plaintiff on the basis of those facts. When Parker learned on July 17, 1995, that Sweis' second requested extension of her FMLA leave, to August 5, 1995, would exceed the twelve-week FMLA leave maximum, she promptly reminded Sweis by letter that the expiration of the twelve weeks was calculated to be on July 24,

1995, and any further extension beyond that date would require application for and approval of a Hyatt-sponsored Extended Medical Leave. Hyatt provided the information to Sweis regarding the extent of the FMLA leave. The corporation was not required to do the math for Plaintiff. Plaintiff knew or should have known that the FMLA leave expired twelve weeks from April 20, 1995. Hyatt's identification of the ultimate termination date of the leave, even though it occurred after Sweis' protected activity, does not establish pretext.

Finally, Sweis contends that pretext can be established by the fact that other employees on FMLA leave received different treatment and that the leave was not consistently applied. The facts offered as evidence do not support the claim of pretext. Plaintiff does not present any other similarly situated employee who was terminated because he/she failed to return to work after exhausting the twelve-week FMLA leave and who had failed to request and receive continuation of leave under the Hyatt Extended Medical Leave program. To support her claim of inconsistently applied procedures, Plaintiff points to two employees who were not terminated because they failed to return to work immediately following the end of their approved leaves. In each case, the employees were within the twelve-week maximum time limit. Although not terminated, one employee received a reprimand. According to the facts of the case, Plaintiff herself also failed to return to work after the expiration of her initially requested leave. Sweis' second physician-determined return to work date was July 6, 1995. Plaintiff did not come to work that day or on the days following. Plaintiff claimed her husband had sent a fax to Hyatt containing the note from the doctor requesting an extension of that leave. However, Plaintiff could not produce a facsimile confirmation sheet as she had previously been able to do following the first requested leave extension on June 2, 1995. Parker took no adverse action toward Sweis on July 6th, instead, she wrote a letter on July 10th asking Sweis to provide a physician's request

for an additional extension so that the Plaintiff could continue her FMLA leave. Parker did not assume a voluntary abandonment of the position by Sweis, nor did Parker reprimand Sweis as she had done with another employee who did not return to work in a timely manner. Furthermore, it should be noted that Plaintiff received this favorable treatment following the registration of her official complaint alleging discriminatory treatment against Hyatt, filed on June 20, 1995. There are no facts that support the allegation that Sweis received worse treatment under her FMLA leave than any other Hyatt employee. Plaintiff has not demonstrated pretext concerning her termination of employment.

## B. Gender-Based Discrimination

In the alternative, Sweis claims her termination stemmed from gender-based discrimination prohibited under Title VII. Evidence of discrimination may be either direct or indirect. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999). Plaintiff does not offer any direct evidence of discriminatory intent, based on gender, on the part of Frank Borg regarding his decision to terminate her employment. Therefore Plaintiff, under the *McDonnell Douglas* guidelines, must establish a *prima facie* case of discrimination to move forward with her suit. To do this, Sweis must show that: (1) she was a member of a protected class, (2) she performed her job satisfactorily, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated males more favorably. *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994). Should Sweis meet her burden, then it is incumbent on Hyatt to produce evidence which, if taken as true, would permit the conclusion that it had a legitimate, non-discriminatory reason for its challenged employment action. *Helland v. South Bend Comm. Sch. Corp.*, 93 F.3d 327, 329 (7th Cir. 1996). Once Hyatt meets its burden, Sweis must then prove that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Because there can be little doubt that Sweis has satisfied the first three elements of her prima facie case, what is left before the Court is whether similarly situated males were treated more favorably.

Sweis alleges that Hyatt treated similarly situated males more favorably. As support for this allegation, Sweis claims that she was excluded from important meetings; undermined by her supervisor, Tom Riegelman; received a lowered performance evaluation; and was ultimately terminated. Because this Court believes that Sweis has failed to establish that similarly situated males were treated more favorably, summary judgment must be granted in Hyatt's favor.

First, Sweis claims that after she began working in the accounting department, she was excluded from management team meetings. According to Sweis, although only hotel controllers and other male directors were included in these meetings, she should have been included in the meetings because she maintained contact with controllers. Hyatt admits that Sweis was left out of meetings, but asserts that Sweis was excluded from only two meetings. Furthermore, Hyatt maintains that not only was there a legitimate, nondiscriminatory reason for excluding Sweis, but also that similarly situated males were not treated more favorably. According to Hyatt, the topic of the first meeting was regaining credibility after an employee embezzled funds. The other meeting which Sweis did not attend concerned a revision of a management operation review program. Borg's reason for failing to invite Sweis to these meetings was that the information discussed bore no relevance to her job functions and was limited to specific operational matters which had no impact on Sweis. Moreover, Hyatt claims that Corson and Merrill, two male directors who were invited to the meetings were not similarly situated to Sweis. Both Corson and Merrill had been controllers with Hyatt for a number of years while Sweis was a rather new addition to the accounting department. Corson was involved in writing the management

operation review program and was responsible for internal controls and audit functions. Merrill was involved in internal finance control and audit functions and was responsible for training controllers. Sweis possessed none of Corson and Merrill's job skills and experience and Sweis has failed to prove that it was necessary that she attend the meetings.

Next, Sweis alleges that in March 1995, less than a year after she transferred into the accounting department, she received a "Meets Expectations" performance rating when she in fact deserved an "Exceeds Expectations" rating. Sweis points to the fact that this was the lowest performance review that she had received while at Hyatt, and her male counterparts, Corson and Merrill both received "Exceeds Expectations"ratings. While it may be true that both Corson and Merrill received "Exceeds Expectations" ratings, it should be noted that they both had many years experience with Hyatt as controllers and they both performed different job functions than Sweis. Sweis was relatively new to the accounting department and Hyatt maintains that McCall gauged her performance accordingly. Also, while a "Meets Expectations" is not an magnificent review of one's job performance, neither is it a scathing critique of one's abilities. This Court will not sit as a "super-personnel department that reexamines an entity's business decisions" in sex discrimination cases. *Dale v. Chicago Tribune Company*, 797 F.2d 458, 464 (7th Cir. 1986). The employer is admittedly in a much better position to gauge an employee's job performance and the adequacy thereof. Sweis has failed to establish that McCall's subjective review of her somehow caused her detriment or that the assessment was somehow less than genuine.

Third, Sweis claims that Riegelman hindered her ability to do her job. Sweis contends that Riegelman did not like women and deliberately failed to order upgraded computers for her. Furthermore, Sweis claims that Riegelman directed profanity at her, and therefore, she was subjected to sexual harassment at Riegelman's hands. Hyatt counters that while it is true that

Sweis did not get an upgraded computer until February 1995, Riegelman had nothing at all to do with the decision. In fact, Hyatt claims that a number of reasons for the delay are legitimate business reasons. Hyatt claims that Sweis' supervisor and department head waited until the budgeting season was over because the change of computer could make Sweis inefficient rather than more productive during that critical time. Further, Sweis' supervisor waited until the beginning of the new budget year, February 1995, to put the request in for the new computer. Finally, Hyatt maintains that Riegelman confronted Sweis only once during the time in question, and that while there can be no doubt that he was rude, Sweis admitted in her deposition that he did not use profanity.

Lastly, Sweis relies on the fact that while she was terminated for failing to timely submit medical leave forms, Riegelman continues to hold a supervisory position even after his alleged sexual discrimination of female employees. Sweis argues that this Court should not look to whether similarly situated males were treated more favorably under the medical leave policies, rather she asks this Court to compare Hyatt's treatment of her to that of Riegelman to determine that she was discriminated against. As Hyatt, correctly points out, this Court is bound to the law established in this circuit and must therefore, grant summary judgment in its favor. "[I]n disciplinary cases - in which a plaintiff claims that [she] was disciplined by [her] employer more harshly than a similarly situated employee based on some prohibited reason - a plaintiff must show that [she] is similarly situated with respect to *performance, qualifications,* and *conduct.*" *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617 (7th Cir. 2000) (citing *Byrd v. Ronayne,* 61 F.3d 1026, 1032 (1st Cir. 1995) (emphasis added). To do so, a plaintiff must normally demonstrate that "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating

circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 617-18 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). In this case, Sweis cannot maintain a claim that Riegelman was a similarly situated male employee. First, Riegelman was a vice-president in the engineering department while Sweis was a director in the accounting department. Also, Sweis and Riegelman performed different job functions and did share the same supervisor. Finally, and most importantly, Sweis and Riegelman did not engage in the same or even similar conduct. Sweis was terminated for failing to follow the prescribed medical leave policies; Riegelman, on the other hand, was reprimanded for his alleged sexual harassment. That the two received disparate treatment is of no consequence, because comparing their behaviors is like comparing apples to oranges. "Incomplete or arbitrary comparisons reveal nothing concerning discrimination ... [m]ore evidence than the mere fact that other employees were not discharged for at best arguably similar misconduct must be demonstrated to sustain a charge of intentional discrimination." *Hiatt v. Rockwell Intern. Corp.*, 26 F.3d 761, 771 (7th Cir. 1994) (citations omitted). In this case, Sweis has failed to demonstrate that similarly situated male employees were treated more favorably for failing to adhere to company medical leave policies which is fatal to her claims. Therefore, summary judgment must be **GRANTED** in Hyatt's favor.

## CONCLUSION

Courts refuse to sit in judgment as super-personnel departments overseeing an employer's business decisions. *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988). There are no facts in the record that Defendant discriminated against Plaintiff because of her complaints. In fact, Plaintiff has not demonstrated that she suffered any adverse action for which there did not exist a legitimate, nondiscriminatory reason. To briefly reiterate, she was

terminated from her position because she failed to follow Hyatt's medical leave policies, and she has not shown Hyatt's proffered reasons to have been pretextual. Nor has Plaintiff offered any proof of a causal nexus between any protected activity and adverse action. In sum, Plaintiff raises no issue of fact for trial on the retaliation claim. Additionally, Sweis has failed to demonstrate that she suffered sexual discrimination because she has failed to demonstrate that similarly situated males were treated more favorably. Therefore, this Court must **GRANT** Defendant's motion for summary judgment (doc. #48).

**IT IS SO ORDERED.**
**DATED:** May 24, 2001

_____

**WILLIAM J. HIBBLER, DISTRICT JUDGE**